UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PEARLIE MAE JOHNSON,

      Plaintiff,

v.                         CASE No. 8:12-CV-2692-T-17TGW

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

      Defendant.

_____


REPORT AND RECOMMENDATION


      The plaintiff in this case seeks judicial review of the denial of

her claim for supplemental security income payments.[2] Because the decision

of the Commissioner of Social Security is supported by substantial evidence

and does not contain reversible error, I recommend that the decision be

affirmed.

_____

      [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue
as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

      [2]This matter comes before the undersigned pursuant to the Standing Order of this
court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was fifty-one years old at the time of the administrative decision and who has an eleventh grade education, has worked as a waitress and motel housekeeper (Tr. 26, 137). She filed a claim for supplemental security income payments, alleging that she became disabled due to epilepsy, brain tumor, strokes, and seizures (Tr. 165). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had the following severe impairments (Tr. 45):

> Depression; hypothyroidism, s/p pituitary macroadenoma, s/p pituitary macroadenoma hemorrhage, s/p prolactinoma, s/p apoplexy; s/p pituitary macroadenoma resection, hypertension, diabetes insipidus, glaucoma, chronic headaches, osteoarthritis, and mild degenerative disc disease of the lumbar spine.

The law judge concluded that with those impairments the plaintiff was restricted to performing (Tr. 47):

> light work as defined in 20 CFR 416.967(b) in environments with no concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation

and with the following limitations: only simple, routine and repetitive tasks; only occasional social interaction; no climbing of ladders/ropes/scaffolds; and only occasional pushing, pulling, climbing of ladders and ramps, balancing, stooping, kneeling, crouching, crawling, and bending. Moreover, the claimant is limited to work that permits the claimant to alternate between sitting and standing at-will during the workday.

The law judge determined further that the plaintiff had no past relevant work (Tr. 52). However, based upon the testimony of a vocational expert, the law judge found that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as packer, sorter and assembler (id.). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do

basic work activities. 20 C.F.R. 416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

The plaintiff challenges the law judge's decision on four grounds: (1) The law judge failed to develop a full and fair record of the plaintiff's medically determinable impairments; (2) substantial evidence does

not support the law judge's finding that the plaintiff had no past relevant work; (3) the law judge failed to consider the transferability of job skills; and (4) the law judge erred in determining the plaintiff's residual functional capacity because she did not consider all of the plaintiff's severe impairments (Doc. 15, pp. 2, 15). The relevant evidence for those contentions is that bearing on the plaintiff's condition on, and after, August 7, 2009, which is the alleged disability onset date (Tr. 137). That evidence does not sustain any of the plaintiff's challenges.

A. The plaintiff contends first that the law judge erred in her duty to develop a full and fair record. Specifically, the plaintiff complains that an MRI from about April 2008 was not included in the record (Doc. 15, p. 10), and that there was no statement from the plaintiff's main treating physician (id., p. 12). These contentions are meritless.

The law judge has a basic duty to develop a full and fair record, regardless of whether a plaintiff is represented by counsel. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). However, the burden of proving disability rests primarily with the plaintiff. See id.; 20 C.F.R. 416.912(c) ("You must provide medical evidence showing that you have an

impairment(s) and how severe it is during the time you say that you are disabled.").

The plaintiff bases her argument about a missing MRI upon the following paragraph from the law judge (Tr. 50):

> As it relates to the claimant's complaints of disabling leg pain, there are no objective findings substantiating the claimant['s] subjective complaints. The medical evidence at <u>Exhibit 19F,</u> discusses a "history of degenerative joint disease that was shown by MRI about two years ago (i.e., two years prior to April 8, 2010)." However, the MRI evidence is not included in the record. Thus, the undersigned had to rely upon the brief discussion in <u>Exhibit 19F,</u> the claimant's subjective complaints, and the remainder of the medical evidence.

The fact that an MRI from about April 2008 was not in the record does not indicate that the law judge breached her duty to develop a full and fair record. In the first place, the law judge's duty involves developing the record for the twelve months prior to the application. 20 C.F.R. 416.912(d); <u>Ellison</u> v. <u>Barnhart, supra,</u> 355 F.3d at 1276. Here, the application was filed on August 24, 2009, and the purportedly missing MRI

was from about April 2008. Thus, the law judge's duty to develop the record did not include the MRI.

Moreover, the duty to develop a "full and fair" record does not mean that the record must include every piece of medical evidence. If that were required, it would be superfluous to say that the record must be "fair," since a record containing every piece of medical evidence would obviously be fair. Accordingly, a record is full if it reflects the plaintiff's impairments without ambiguity, even it if is not all-encompassing.

In all events, the Commissioner points out that it appears that the MRI is in the record (Doc. 17, p. 6). Thus, the record contains an MRI of the lumbar spine from April 28, 2008 (Tr. 487).

For these reasons, the law judge did not breach her duty to develop a full and fair record with respect to an April 2008 MRI.

Furthermore, even if the April 2008 MRI is not in the record, that would not warrant a remand. A failure to develop the record does not warrant a remand unless the plaintiff demonstrates evidentiary gaps in the record which result in "unfairness or clear prejudice," regardless of whether the law judge had a basic or special duty. Graham v. Apfel, 129 F.3d 1420, 1423

(11th Cir. 1997); see also Edwards v. Sullivan, 937 F.2d 580, 586 (11th Cir. 1991); Robinson v. Astrue, 235 Fed. Appx. 725, 727 (11th Cir. 2007); Henderson v. Commissioner of Social Security, 353 Fed. Appx. 303, 305 (11th Cir. 2009). Specifically, the plaintiff must identify "what facts could have been submitted ... that would have changed the outcome." Edwards v. Sullivan, supra, 937 F.2d at 586; see also Henderson v. Commissioner of Social Security, supra (the plaintiff failed to show prejudice because she "does not explain how the absence of ... [that evidence] precluded the ALJ from making an informed disability determination. Nor does she explain how such an assessment would have affected the ALJ's overall disability determination."). Therefore, the absence of an MRI, in itself, does not demonstrate reversible error. See id.

As the Commissioner argues (Doc. 17, pp. 9-10), the plaintiff has failed to make the required showing. She points out that more timely MRI's in the record from April 8, 2010, and March 4, 2011, indicate that the plaintiff simply had mild degenerative disk disease (Tr. 512, 838). Also, the April 2008 MRI was described in the hospital note (Tr. 495, 498).

In addition, the record was 950 pages long with the medical evidence consisting of more than 700 pages. Under these circumstances, even if one MRI from more than one year before the alleged onset date was missing from the record, that would not create an evidentiary gap that results in unfairness or clear prejudice. Notably, the plaintiff has made no attempt to explain how that MRI would affect the law judge's disability determination.

The plaintiff also mentions on this issue that at the hearing the law judge asked the plaintiff's representative if a medical source statement had been obtained from "Dr. Isar," and was told that it had not because the plaintiff could not afford the $250 fee for such a statement (Doc. 15, p. 12). In the first place, the doctor's name is Issar, and the plaintiff does not indicate which of the two Dr. Issars at the facility the plaintiff had in mind (see, e.g., Tr. 950). Regardless, the plaintiff merely mentions these circumstances and does not develop any argument regarding a failure to develop the record. Moreover, with respect to this hint of a contention, the plaintiff, contrary to the directives of the Scheduling Order and Memorandum Requirements (Doc. 12, p. 2), does not cite any legal authority supporting an obligation of the

Social Security Administration to pay for a treating source statement by Dr. Issar.

Furthermore, even though the law judge did not have a treating source statement from one of the Drs. Issar, she did have their treatment notes. Even more significantly, the plaintiff apparently last saw a Dr. Issar on April 15, 2010, and thereafter went to the Lakeland Regional Medical Center for treatment. There are more than 200 pages from that facility regarding the plaintiff's treatment after she stopped seeing Dr. Issar. Under these circumstances, the plaintiff cannot plausibly make an argument that the lack of a treating source statement creates a prejudicial gap in the record. And, as indicated, she did not attempt to make such an argument.

In the middle of her argument about the development of a full and fair record, the plaintiff throws in comments about the law judge's credibility determination. That is unacceptable.

In order to reduce, if not eliminate, the stream-of-consciousness arguments regularly seen in these cases, the Scheduling Order has been modified. As before, the Order requires the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is

being challenged" (Doc. 12, p. 2). It now provides further that "arguments within a properly articulated issue must relate directly to the particularized issue and shall not include unrelated contentions, observations, or comments" (id.). The Order warns that "[a]ny contention for which these requirements are not met will be deemed forfeited and not evaluated" (id.).

The plaintiff's comments about the law judge's credibility determination clearly violate these provisions of the Scheduling Order and Memorandum Requirements. There is no issue articulated concerning the credibility determination. Moreover, the comments concerning that matter were stuck in the middle of the argument regarding the development of a full and fair record. Consequently, any credibility challenge is deemed forfeited.[3]

B. The plaintiff argues that the law judge's finding that the plaintiff has no past relevant work is not supported by substantial evidence (Doc. 15, p. 12). This argument is mystifying. I have no idea what plaintiff's counsel had in mind with this contention. Maybe she was thinking that family caregivers, like stay-at-home mothers, work hard, albeit without pay.

_____

[3]Notably, the Commissioner addresses the plaintiff's purported credibility challenge (Doc. 17, pp. 10-14). There, the Commissioner cogently explains why the law judge's credibility determination is reasonable and adequately explained.

I completely agree with that thought, but it has nothing to do with a claim for disability benefits.

If a plaintiff is found to have past relevant work and can return to that work, the claim for benefits will be denied. Thus, it is more favorable to a plaintiff for the law judge to find, as the law judge did here, that a plaintiff has no past relevant work. In all events, there is no benefit to the plaintiff to have a finding of past relevant work.

Moreover, the law judge did not err in finding that the plaintiff had no past relevant work. In order for prior work to be considered relevant, it must, among other things, have been substantial gainful activity. 20 C.F.R. 416.965(a). Since the plaintiff was not paid for taking care of her mother, her care was not substantial gainful activity and therefore was not past relevant work.

Further, the Commissioner asserts, if there were error in this respect, the error would be harmless. In fact, as previously explained, any error would be beneficial error.

C. In a related argument, the plaintiff asserts that, if there were a remand, consideration of whether the plaintiff had transferable job skills

would be required (Doc. 15, p. 15). But why would the plaintiff care if the law judge found no transferable skills? A finding of transferable skills would increase the number of jobs that a plaintiff could perform and thereby increase the chance that the plaintiff would be found not disabled.

Here, the law judge concluded that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work" (Tr. 52). That conclusion is correct. As previously indicated, being her mother's caregiver does not constitute past relevant work under the regulations. Further, the plaintiff makes no argument that prior jobs of waitress and motel housekeeper amounted to past relevant work. Of course, why should she, since that would only hurt her position?

In short, there is nothing about the issue of transferable skills that supports the plaintiff's claim for disability benefits.

D. The plaintiff states her final issue as follows (Doc. 15, p. 15): "THE RESIDUAL FUNCTIONAL CAPACITY ASSESSMENTS COMPLETED BELOW ARE NOT SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE, BECAUSE THEY OMIT CONSIDERATION OF ALL SEVERE IMPAIRMENTS, AND THE CLAIMANT'S GAF WAS

NOT PROPERLY ADDRESSED AND/OR CONSIDERED." For the most part, this contention was not meaningfully developed. To the extent it is developed, it is meritless.

The plaintiff's assertion that the law judge did not mention many of the plaintiff's severe ailments is simply not correct (id., p. 16). The law judge, in fact, evaluated the plaintiff's various complaints (Tr. 48-51).

The only impairment that the plaintiff identifies as not being evaluated is chronic headaches (Doc. 15, p. 16). The law judge specifically found that the plaintiff's severe impairments included chronic headaches (Tr. 45). Moreover, the law judge expressly considered the plaintiff's complaint of headaches in connection with the plaintiff's pituitary tumor. In this respect, the law judge stated (Tr. 50-51):

> The claimant did have a pituitary tumor that produced both neurological and hormonal changes. Exhibit 15F. However, the medical evidence also indicates that the claimant's neurological and hormonal symptoms were successfully treated by the claimant's August 7, 2009 surgery. For instance, on September 15, 2009, the claimant reported to the emergency room reporting severe headaches and fatigue. However, a head CT scan and brain MRI were both normal. On October 17, 2009, the claimant presented to the emergency

room with right-sided pain in her face, mouth, neck, and ear. This time, however, the claimant's symptoms were attributed to "dental carries" or the rotting of her teeth. She was discharged from the hospital with prescriptions for Vicodin and penicillin. By January 11, 2010, the claimant was only reporting mild headaches and episodic nosebleeds. Again, her brain MRI was negative. Exhibits 13F, 14F. On April 7, 2010 the claimant was still only reporting mild headache. Her visual fields were stable and improved. Exhibit 19F. Thus, the undersigned finds the claimant's brain tumor well substantiated by the medical evidence, but non-disabling as of the claimant's surgery on August 7, 2009.

The plaintiff makes no attempt to challenge the law judge's finding that, after the plaintiff's successful brain surgery, she was only suffering mild headaches. More significantly, the plaintiff does not refer to any medical evidence indicating that the plaintiff has functional limitations from headaches. A disability finding is predicated not upon the diagnosis of an impairment, but upon the functional limitations from the impairment. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

The Scheduling Order and Memorandum Requirements direct the plaintiff to support each discrete challenge "by citations to the record of

the pertinent facts" (Doc. 12, p. 2). The plaintiff does not make any citation

to the record about headaches.[4]   In fact, the plaintiff did not even testify

about headaches.  Under these circumstances, the plaintiff has clearly failed

to show that the law judge erred in her assessment of the plaintiff's

headaches, which, after all, the law judge found to be a severe impairment.

The plaintiff also mentions that there is some evidence in the

record that the plaintiff alleges side effects from medication (Doc. 15, pp. 6-

17).  However, she does not make any argument based on those allegations.

Consequently, the plaintiff has not even attempted to show that she has any

functional limitations from her medications that are greater than those found

by the law judge in the residual functional capacity determination.

Significantly, the law judge specifically considered the plaintiff's

allegation of medication side effects (Tr. 49).  However, the law judge found

that the plaintiff's statements were not credible to the extent that they are

inconsistent with the residual functional capacity assessment (id.).   As

---

[4]It is noted that the record citations that the plaintiff does make are too cryptic for
me to understand.

indicated, the plaintiff has not properly challenged the law judge's credibility determination.

In the statement of this issue, the plaintiff asserts that the claimant's Global Assessment of Functioning (GAF) was not addressed or considered (Doc. 15, p. 15). However, in the body of the argument on this issue, the plaintiff does not even mention the GAF scale, or a GAF score. Thus, this purported contention violates the Memorandum Requirements that the plaintiff support her challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 12, p. 2). Consequently, any issue regarding GAF scores is forfeited.

Nevertheless, it is appropriate to add that the Commissioner has declined to endorse the GAF scale for use in the Social Security program. Wind v. Barnhart, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005). The plaintiff has made no attempt to show that this policy is error.

Also, while the law judge did not discuss GAF scores, she fully considered the plaintiff's mental impairment. Thus, she found that the plaintiff had a severe impairment of depression. She found further that the plaintiff has functional limitations from that condition and restricted the

-19-

plaintiff to "only simple, routine and repetitive tasks" with "only occasional social interaction" (Tr. 47). The plaintiff has made no attempt to show that she has greater functional limitations from a mental impairment.

Therefore, on the plaintiff's final issue, she has not shown that the law judge erred in her determination of the plaintiff's residual functional capacity.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error. I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
DATED: OCTOBER 2 , 2013 UNITED STATES MAGISTRATE JUDGE

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal. 28 U.S.C. 636(b)(1).